HENRY MILES *et al.* V. ROBERT MILES *et al.*

No. 15,600. (96 Pac. 481.)

SYLLABUS BY THE COURT.

1. TRUSTS AND TRUSTEES—*Executed, or Irrevocable, Trust.* A deed of trust, properly executed and delivered to the trustee and accepted by him, which in express terms conveys the title to real estate to the trustee, who is given power to collect the rents, income and profits thereof and to pay the same to the grantor during her natural life for her own use, and which declares that upon the death of the grantor the trustee shall execute and deliver quitclaim deeds to certain beneficiaries therein named, conveying the full legal title to the real estate, creates a complete and executed trust, which will be enforced in equity.

2. ———— *Beneficial Interest Retained by Grantor—Trust Not Executory.* Neither the fact that the legal title to the real estate is not to be conveyed to the beneficiaries until the grantor's death nor the fact that the grantor retains a beneficial interest in the property during her life will render it an executory trust, where the instrument expressly declares upon what terms and conditions the legal title to the trust estate has been conveyed, and the final intention of the grantor of the trust with respect thereto appears with absolute certainty, so that nothing remains to be done except that the trustee shall carry into effect the intention as declared.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed June 6, 1908. Affirmed.

STATEMENT.

ON July 5, 1905, Eleanora Miles, a widow, executed and delivered to T. M. James, as trustee, a certain deed. The deed recites that Mrs. Miles, who resided at Burden, Cowley county, owned and possessed certain real estate and personal property. The real estate, which is fully described, consisted of several farms in Cowley county and a number of city lots in Kansas City, Mo. The personal property consisted of $3500 in bank, for which she held a certificate of deposit.

After the description of the property the conveyance provides as follows:

"All of which real and personal estate the party of the first part is desirous that the party of the second part shall have and hold in trust for certain uses and purposes hereinafter set forth and expressed; and in conformity with said intention, and for the purpose of carrying the same into effect, the said party of the first part, in consideration of the sum of one dollar paid to her by the party of the second part, the receipt of which is hereby acknowledged, and for divers other good consideration, hath given, granted, sold and conveyed, and doth give, grant, bargain, sell and convey, all of the said lands, tenements and real estate, and doth hereby assign, transfer and set over said personal estate, the same hereinbefore specified and described, unto the said T. M. James, his successors and assigns; to have and to hold said premises, together with the appurtenances, unto the said T. M. James, his successors and assigns, in trust for the uses, purposes and objects hereinafter set forth and expressed, and for none other, namely:

"Said trustee and his successors in said trust shall collect and receive the rents, income and profits of said estate, and shall from time to time, as said party of the first part shall determine, pay over to her, the said party of the first part, all of the said rents, profits and income that shall accrue during her natural life, for her own use, except a reasonable amount to be deducted for expenses and incidental charges of said trustee; and said party of the first part hereby declares that upon her decease the said trust hereby created shall cease and determine, and said party of the second part shall then distribute and turn over said estate, and execute and deliver quitclaim deeds of the aforesaid real estate, except under existing conditions hereinafter mentioned, with warranty against encumbrances by or through himself, as follows:"

Then follow the names of the children and grandchildren of the donor to whom the particular tracts of real estate are to be conveyed by the trustee, and the direction that the trustee shall divide equally the $3500

among four grandchildren. The deed then reads as follows:

"That said trustee shall keep said trust estate, real and personal, constantly invested in the safest and most profitable manner in his power, and if in the event of a depreciation in value of any of said real estate, or if for any reason the said trustee shall believe that the purpose of this trust will be better subserved by a sale of any part or all of said property before the death of Eleanora Miles, then the particular conveyance otherwise to be made of the property deemed desirable to sell as aforesaid shall not be made; but such trustee shall sell and convey the same to such others as he may desire to sell to, but the proceeds of such sale or sales shall be held in trust for the same uses and purposes that the land sold would have been held for, if such sale or sales had not been made, and the same received in such instances shall, upon the death of Eleanora Miles, be substituted for the particular land sold, and be paid over to the respective person or persons to whom said land, according to the covenants and agreements herein, would have been conveyed if such sale had not been made; that said trustee shall not be held responsible for shrinkage in value or losses unintentionally made by him in investing or caring for said estate.

"That in case of the decease or incapacity of said trustee to act, or his resignation, others may be nominated by the party of the first part, should she see fit to do so, to be appointed as trustee in place of said T. M. James, with the same powers and subject to the same duties and obligations that are imposed upon said T. M. James by the terms hereof.

"That all expenses and incidental charges of said trustee shall be deducted from the income of said trust property, and an allowance of $500 shall be made to T. M. James for his services as trustee.

"And the said party of the second part doth hereby signify his acceptance of this trust, and doth hereby covenant and agree to and with the party of the first part faithfully to discharge and execute the same according to the true intent and meaning of these presents.

"In testimony whereof the parties aforesaid have

Miles v. Miles.

hereunto set their hands and seals the day and year last above written.     ELEANORA MILES.
                                        T. M. JAMES.
    "In the presence of Sam'l J. Day."

The deed was duly acknowledged by Eleanora Miles and T. M. James before a notary public and recorded in the office of the register of deeds of Cowley county.

Mrs. Miles died on the 13th day of February, 1906, and on the following day the trustee executed and delivered the several conveyances of real estate as directed in the trust deed, and paid over to the four grandchildren the money represented by the certificate of deposit.

Henry Miles, who is the son of Eleanora Miles, brought this suit in partition and ejectment. Those defendants who are plaintiffs in error with him filed answers and cross-petitions seeking the same relief; the other defendants set up in their answer the deed of trust and the conveyances made to them by T. M. James, as trustee. The court rendered judgment against the plaintiff and those defendants claiming in opposition to the trust deed, and this proceeding is brought to review the judgment.

*John H. Wright, Hackney & Lafferty,* and *James McDermott,* for plaintiffs in error.

*G. H. Buckman,* for defendants in error.

The opinion of the court was delivered by

PORTER, J.: It is the contention of plaintiffs in error that the trust created by the deed is an executory one, and conveyed no present interest to the donees; that the latter took nothing by the deed until the death of Mrs. Miles and the conveyances by the trustee after her death; and that the conveyance was subject to revocation during her lifetime. For these reasons it is insisted that the trust is void. It is well settled that

25—78 KAN.

courts of equity will enforce a perfect or executed trust, though voluntary, but will lend no assistance in enforcing an agreement to create a trust which remains executory. The authorities cited with respect to gifts *inter vivos* and *causa mortis,* as well as those which define the necessary elements of a gift generally, have very little application to a trust deed. A gift to be executed requires delivery, while a voluntary trust is executed by declaration. The important difference is aptly stated in *Savings Bank v. Merriam,* 88 Me. 146, 33 Atl. 840, in the following language:

"The creation of a trust is but the gift of the equitable interest. But on account of the difference in the form and purposes of the two transactions, it necessarily follows that different acts are essential in the two cases. While delivery and a surrender of all present and future dominion over the property given is absolutely necessary in a gift, these would be inconsistent with the very purposes of a trust." (Page 150.)

An executory trust is said to be one where the beneficiary is not yet clothed with the equitable title but has a mere right to have some act done which will vest in him such equitable title. (*Nicoll v. Ogden et al.,* 29 Ill. 323, 81 Am. Dec. 311.) The instrument here in express terms conveys the property to a trustee with directions that the trustee shall, at the death of Mrs. Miles, convey the legal title to the beneficiaries, and it clothed the beneficiaries with the equitable title the moment it was executed and delivered.

"A trust is executed when no act is necessary to be done to give effect to it when the trust is fully and finally declared in the instrument creating it." (3 Pom. Eq. Jur. § 1001.)

In the same section it is said:

"When, by the terms of the trust as created, and for the purpose of carrying it into effect, the trustee is directed to do some act with the property, the trust is not thereby executory. . . . All trusts are in a sense executory, because a trust can not be executed except

by conveyance, and therefore there is something always to be done. But this is not the sense which a court of equity puts upon the term 'executory trust.'"

Was it left either for the courts or the trustee to determine what Mrs. Miles's intention was? Did she act as her own conveyancer or leave it for the courts or the trustee to become her conveyancer? These are the tests. The instrument expressly declares upon what terms and conditions the legal title to the trust estate has been conveyed; the final intention of the creator of the trust with respect thereto appears with absolute certainty, so that nothing remains to be done except that the trustee shall carry into effect her intention as declared.

The deed in question was not testamentary in its character. Plaintiffs in error rely upon *Hazleton v. Reed,* 46 Kan. 73, 26 Pac. 450, 26 Am. St. Rep. 86, and quote from the syllabus of that case as follows:

"It may be laid down as a general rule that a written instrument which discloses the intention of the maker respecting the posthumous destination of his property, and which is not to operate until after his death, is testamentary in its character, and not a deed or contract, and may be revoked."

It is difficult to see how the doctrine declared in that case can affect the question here. The language of the syllabus refers to the written instrument which was itself construed in *Reed, Ex'r, v. Hazleton,* 37 Kan. 321, 15 Pac. 177, and expressly held not to "contain any of the usual operative words of a conveyance, with the possible exception of this clause: 'After the death of the said Henry Ricket of the first party, the right and title of the land in question shall vest in the said John Hazleton of the second party.'" (Page 326.) It was further said in the opinion that "that provision had no present operation, and could be revoked by the grantor at any time. It was testamentary." (Page 326.) In the present case the operation of the con-

veyance was not deferred until after the death of Mrs. Miles. On the contrary, it operated at the moment of its execution and delivery, and conveyed the title of the real estate to the trustee in trust for the donees. It was only the enjoyment of the property which was deferred until after her death.

In their briefs counsel speak of an "executed gift" or a "gift executed." This instrument created an executed, or completed, trust, and from the time the deed was executed and delivered it became irrevocable. It conveyed the legal title to the property to the trustee and the equitable title *in præsenti* to the beneficiaries.

"The mere fact that certain provisions in a deed of trust are not to take effect until the grantor's death does not affect its character as creating an executed trust, and render it testamentary, where a present estate is transferred by it to the trustee." (28 A. & E. Encycl. of L. 886, and cases cited.)

Nor does the fact that the donor retained a beneficial interest in the property during her life destroy its character as an executed trust. In *Stone v. Hackett, Executor, & others,* 78 Mass. 227, the income of the property was to be paid to the donor during his life, and upon his death the principal was to be divided among certain charities. The trust was held valid. In *Davis v. Ney,* 125 Mass. 590, 28 Am. Rep. 272, a trust was upheld which allowed the donor to receive, not only the income, but such part of the principal as she might need during her life. In the case of *In re Estate of Soulard,* 141 Mo. 642, 663, 43 S. W. 617, 622, it was held that even the reservation of the right to direct the reinvestment of the fund was not inconsistent with a valid trust, because the reservation did not affect the title of the donees or devest them of their interest and was only a reasonable provision for the protection of the equitable rights of the donor. In the opinion it was said:

"The reservation was not of title, but of power cou-

pled with the trust, and is not inconsistent with the complete transfer of the title *in præsenti*." (Page 664.)

(To the same effect is *Williams v. Evans*, 154 Ill. 98, 39 N. E. 698.)

"The character of the trust as complete is not affected by the fact that the right of enjoyment is reserved to the settlor until a future period, as until his death, provided the intention to place the subject of the trust beyond his control is clearly manifested. But it is otherwise where title is not intended to pass until the settlor's death." (28 A. & E. Encycl. of L. 894, and cases cited in note 5.)

It is clear that none of the provisions of the deed shows an intention on the part of Mrs. Miles to retain any dominion or control over the property. All the legal title is conveyed to the trustee, and he is given absolute control over it. There is nothing inconsistent with an executed trust in the reservation of the income for her own use. The provision authorizing the trustee to sell and convey, if in his opinion the purposes of the trust will be better subserved by so doing, is coupled with a direction that, in case he does sell, the proceeds are to go to the beneficiaries named in lieu of the real estate.

It is seriously argued that we must refuse to enforce the express trust declared in the deed because incorporated into it is a provision that the trust was to cease at her death, and it is insisted that the moment she died all authority of the trustee was revoked. No court would be justified in adopting a construction so purely technical and so utterly at variance with the expressed intention of the donor. In the same sentence the deed declares that at her death the trustee shall execute and deliver to the beneficiaries quitclaim deeds of the real estate. The language of the provision reads:

"And said party of the first part hereby declares that upon her decease the said trust hereby created shall cease and determine, and said party of the second part shall then distribute and turn over said estate, and

execute and deliver quitclaim deeds of the aforesaid real estate, except under existing conditions hereinafter mentioned, with warranty against encumbrances by or through himself, as follows:"

It follows that the judgment must be affirmed.